# LATTIMORE, Respondent, v. UNION ELECTRIC LIGHT & POWER COMPANY, Appellant.

### St. Louis Court of Appeals, November 18, 1907.

1. **NEGLIGENCE: Obstruction on Sidewalk.** A hose, attached by a builder to a water plug on the outside of a sidewalk and stretched across the sidewalk at a distance of from four to eight inches above the walk, for the purpose of conveying water to a foundation which the builder was constructing upon an adjacent lot, and maintained in that position for more than a week until it was covered with lime dust so that it resembled the sidewalk in color, was an obstruction of such a character that it justified a finding by the jury that it was negligence on the part of the builder to so maintain it.

2. ————: ————: **Evidence: Pleading.** In an action for injuries received by plaintiff by stumbling upon such hose, where the petition did not allege the hose was covered with dust so as to make its color like the pavement, evidence of that circumstance was nevertheless admissible on the question of the plaintiff's contributory negligence which was pleaded as a defense.

3. ————: ————: **Contributory Negligence: The Care Required of a Passer on Sidewalk.** A pedestrian upon a sidewalk in a city may place reliance on the safety of the walk such that he is not required to exercise extraordinary care; he is not necessarily negligent in allowing his attention to be diverted at times from the walk in front of him; whether a pedestrian, who stumbled and fell over a hose stretched four to eight inches above the walk and discolored by lime dust so that it was the same in color as the walk, was negligent in failing to observe the hose, was properly submitted to the jury, in an action for injuries received on account of the fall.

4. ————: **Contributory Negligence: Burden of Proof.** Contributory negligence is a matter of defense which must be pleaded and proved in order to be available to a defendant.

5. ————: **Obstruction on Sidewalk: Municipal Ordinance.** In an action for injuries caused to plaintiff by stumbling over a hose stretched across the sidewalk by the defendant, a municipal ordinance permitting the defendant to stretch a hose across a sidewalk was irrelevant and properly excluded, where the issue was not whether the defendant had a right to use the hose, but whether he used it in a careless manner.

6. DAMAGES: Personal Injuries: Excessive Verdict.    In an action for personal injuries where the evidence showed that the membrane of the plaintiff's knee was ruptured so that his leg was kept in cast for three months, that he went on crtuches for three months more and walked with a cane for another three months, that his knee was stiff from the injury and would be permanently so, that he lost $150 a month while disabled and paid $200 for medical attendance, a verdict for $2800 was not excessive.

Appeal from St. Louis City Circuit Court.—*Hon. Walter B. Douglas,* Judge.

AFFIRMED.

*Jno. H. Drabelle* for appellant.

The court erred in refusing to give the peremptory instruction asked by defendant at the close of plaintiff's case, and erred in refusing to give the peremptory instruction asked at the close of the whole case.   Wheat v. St. Louis, 179 Mo. 572; Coffee v. Carthage, 186 Mo. 585; Jackson v. Kansas City, 106 Mo. App. 57; Churchman v. Kansas City, 44 Mo. App. 665; Strutt v. Railroad, 18 App. Div. N. Y. S. C. 134; Kewaunee v. Depew, 80 Ill. 119; Yahn v. Ottumwa, 60 Ia. 429; Gallagher v. Proctor, 84 Me. 41; Conneaut v. Naef, 54 O. St. 529; Robb v. Connellsville, 137 Pa. St. 42; Stackhouse v. Vendig, 166 Pa. St. 582; Quincy v. Baker, 81 Ill. 300; Shallcross v. Philadelphia, 40 Atl. 818; Benton v. Philadelphia, 48 Atl. 267; Whitman v. Lewiston, 97 Me. 519; Easton v. Philadelphia, 26 Pa. Sup. 519; Weston v. Troy, 139 N. Y. 281; Whalen v. Gas Light Co., 151 N. Y. 70; Chicago v. Bixby, 84 Ill. 82; Tuffe v. State Center, 57 Ia. 538; Kannetzki v. Detroit, 94 Mich. 341; Hausman v. Dedison, 85 Wis. 187; Vicksburg v. Hennesy, 54 Miss. 391; Sutphen v. Hempstead, 80 Hun 409; Webb's Pollock on Torts (Amer. Ed.), p. 45.

*Paul V. Janis* and *Truman P. Young* for respondent.

(1) It is actionable negligence to place a dangerous obstruction on a public sidewalk which results in the injury of a pedestrain. A hose stretched above a much traveled down town sidewalk, under the circumstances narrated in the evidence, is a dangerous obstruction, and defendant's requested instructions for a nonsuit were properly refused. Beck v. Brewing Co., 167 Mo. 199; Norton v. Kramer, 180 Mo. 536; Perigo v. St. Louis, 185 Mo. 274; Chilton v. St. Joseph, 143 Mo. 192; Boland v. Kansas City, 32 Mo. App. 8; Stevens v. Walpole, 76 Mo. App. 213; Graney v. St. Louis, 141 Mo. 180; McKissick v. St. Louis, 154 Mo. 588; Franke v. St. Louis, 110 Mo. 516; Gerdes v. Iron Foundry Co., 124 Mo. 347; Mitchell v. Plattsburg, 33 Mo. App. 555; Carrington v. St. Louis, 89 Mo. 208; Flynn v. Neosho, 114 Mo. 572; Beauvais v. St. Louis, 169 Mo. 500. (2) A traveler on a public sidewalk has a right to assume that the sidewalk is reasonably safe for travel. He is not required to anticipate the wrongful act of another in obstructing it. Stephens v. Macon, 83 Mo. 353; Perette v. Kansas City, 162 Mo. 244; McCormick v. Monroe, 64 Mo. App. 201; Powers v. St. Joseph, 91 Mo. App. 65; Williams v. Hannibal, 94 Mo. App. 556; Holloway v. Kansas City, 184 Mo. 29; Burnes v. St. Joseph, 91 Mo. App. 489; Roe v. Kansas City, 100 Mo. 193; 2 Smith on Municipal Corporations, sec. 1304 p. 1338; Elliott on Roads and Streets, sec. 635, p. 679.

GOODE, J.—Plaintiff having been injured by a fall, instituted this action to recover damages from defendant, alleging the accident was due to its negligence. The defendant company was putting in a foundation for a building on the west side of Fourth street in the city of St. Louis, near Lucas avenue. This work was being carried on under a permit from the city au-

thorities regulating in some particulars, the manner
of doing it, and the use by defendant, during its progress,
of the adjacent sidewalk. A water tap or plug had been
sunk at the outer edge of the sidewalk near the curb, in
order that a hose might be attached and water ob-
tained to use in laying the foundation. We shall state
the facts according to the testimony for plaintiff, inas-
much as it is contended the court erred in not directing
a verdict for defendant on all the evidence. The water
tap projected above the sidewalk, according to the ver-
sion of the plaintiff, from four to eight inches. A hose
of common size had been attached to it by the defendant's
workmen, and carried across the sidewalk, which was
fifteen feet wide, into the excavation for the foundation.
By this means water was obtained to use in mixing the
concrete that went into the foundation. The hose had re-
mained stretched across the sidewalk for from one to
three weeks prior to the accident; the testimony is not
positive as to the length of time, but it was within the
period stated. As plaintiff was walking northward on
Fourth street about three o'clock in the afternoon, he
tripped on the hose and fell to the sidewalk where he lay
stunned for an interval, but was helped up and proceeded
to his place of business. The evidence regarding the
seriousness of his injuries will be adverted to in connec-
tion with the exception to the verdict on the ground that
the damages awarded were excessive. Defendant in-
sists the evidence had no tendency to establish negli-
gence on its part, as nothing was proved except that it
had simply attached a hose of common size to an ordi-
nary water tap and had carried the hose, lying on the
sidewalk, into the excavation for the foundation to get
water. If this were all the evidence tended to prove, we
would accede to the proposition that a verdict for defend-
ant should have been ordered. But plaintiff's account
of the accident puts the question in a different light; nor
was he entirely uncorroborated by other witnesses. The

substance of his statement is that after he regained consciousness and arose to his feet, he examined the position of the hose closely because he wanted to learn how he happened to fall.  He swore the hose where it was attached to the water plug, arose from four to eight inches above the sidewalk and was stretched across the sidewalk into the cellar of defendant's building at practically that elevation.  In other words, the  hose was drawn taut, or nearly so, and stood from four to eight inches above the walk.  The testimony tends to show that though the hose was originally black, it was covered with lime dust as was the sidewalk, so that the color of the two was nearly the same.  Such an obstruction to the safe use of a walk intended for foot travel on a main thoroughfare of a great city, and maintained for a considerable period, might well be found to constitute negligence on the part of the person maintaining the impediment; in truth might be found to constitute a nuisance.  [2 Dillon, Mun. Corp., sec. 1032; Congreves v. Smith, 18 N. Y. 79; Beck v. Brew. Co., 167 Mo. 195, 199.]  The trial court did not err in submitting to the jury the question of defendant's negligence.

It is insisted that on the entire evidence plaintiff was shown conclusively to have been guilty of negligence contributing to the accident, and, therefore, should have been nonsuited.  The argument is that the effect of the evidence is that plaintiff was paying no attention to his footsteps, or the security of the sidewalk, but had permitted his attention to be diverted from his course to watch the work on the foundation; and this inattention to his own safety was the proximate cause of the fall, as otherwise he would have observed the hose across the walk and have avoided stumbling over it.  This argument loses sight of plaintiff's testimony.  He swore he was walking along in the ordinary way, looking straight ahead of him.  An effort was made on cross-examination, to get him to state that his vision did not take in the

sidewalk as he proceeded, but was raised above it so that he was not heeding whether his pathway was safe or not. The clear effect of what plaintiff swore is that he was walking as men usually do on the pavements of thoroughfares in large cities, seeing the walk ahead of him as he went along but not concentrating his attention on it; and that while so proceeding he failed to observe the hose stretched across his way. It is suggested in the brief for defendant that as the petition does not allege the hose was covered with dust so as to make its color like that of the pavement, this circumstance does not count for negligence on the defendant's part, nor does it. But it was properly received in proof, as being relevant to the issue of plaintiff's contributory negligence in not noticing the hose. It was not shown that plaintiff had been along there previously while the hose was across the walk and had observed it in that position. We do not say the evidence would wholly fail to support a finding that he had seen it, or had reason to know it was there, but do say his own testimony is that he knew nothing about its position until he tripped over it. Even if plaintiff had casually glanced aside, his attention having been attracted to the foundation of defendant's building, or to some other object, it would not follow he was guilty of negligence as a legal conclusion. A foot passenger on a sidewalk in a city may place more reliance on the security of the walk than would be indicated by such extreme care. People constantly divert their attention from their footsteps when on sidewalks, and to pronounce such an act necessarily one of negligence, would amount to denouncing the entire public as careless. [McCormick v. City of Munroe, 64 Mo. App. 197; Barr v. Kansas City, 105 Mo. 550, 558, 16 S. W. 484; Franke v. St. Louis, 110 Mo. 516, 19 S. W. 938; Holloway v. Kansas City, 184 Mo. 19, 29, 82 S. W. 89.] We have been cited to many cases by defendant's counsel, supposed to support the proposition that plaintiff himself should have

been held guilty of contributory negligence by the court. It is useless to review all those decisions, which, however, we have read. They are not in point in the present case; some of them rested on facts essentially different and in others it was held that on the facts in proof the case was for the jury. The case most relied on by defendant is Strutt v. Railroad, 18 N. Y. App. Div. 134, wherein the plaintiff was nonsuited for contributory negligence in stumbling over a hose lying across a wharf. This decision was put on the ground that articles of different kinds are usually lying on docks and wharves and that there are few places where a traveler is less justified in proceeding without attention to his course. The difference is obvious between such a case and one where a foot passenger stumbles over a hose nearly the color of the pavement and, therefore difficult to distinguish, stretched above a walk that is much used. Plaintiff had no reason to anticipate a dangerous impediment on the walk, or to be specially observant for such a thing. It is not a common, but a very extraordinary circumstance for a sidewalk to be thus obstructed. It is a common incident to extend a hose over a sidewalk in front of a residence while the hose is in use; but not to stretch it taut above the walk. What the plaintiff was bound to do for his own safety was to use ordinary care in proceeding along the sidewalk to discover impediments, pitfalls or other dangers. Whether he did so or not was, under the facts, palpably a question to be determined by the jury. [Coffey v. Carthage, 186 Mo. 573, 585.] A jury might find in this connection that the hose stretched above the sidewalk, was so conspicuous that a man exercising ordinary care would not have failed to see and avoid it; but it would be perfectly reasonable to find the contrary. In truth, it strikes us that if plaintiff was not before aware of the position of the hose, the inference of negligence on his part is rather weakly supported. [Coffey v. Carthage, supra.]

An exception was saved to every ruling of the court on the request for instructions except the giving of those asked by the defendant. It would prolong this opinion beyond measure to copy the instructions in full and consider in detail the numerous exceptions taken to the rulings on them. Those given fairly covered the case and we think accurately stated the law. The first of the refused instructions was manifestly erroneous in requiring plaintiff to establish by a preponderance of evidence that he was not guilty of contributory negligence. [Holding v. St. Joseph, 92 Mo. App. 143.] The first clause of said instruction was that the burden of proof was on plaintiff to show by the greater weight of the evidence, his injury was caused wholly by the negligence of the defendant and without negligence on his part. Plaintiff was not bound to establish by affirmative proof that he was free from negligence. His contributory negligence was matter of defense, to be pleaded and proved by the defendant. The second refused instruction, so far as it required plaintiff to exercise ordinary care for his own safety, was covered by those given, and particularly by the first one given at defendant's request, in which the jury were told that if plaintiff's injury was wholly or in part caused by his negligence "in failing to watch or observe his footsteps" the verdict must be for the defendant. We think it was not error to refuse to grant another instruction substantially like the one given, except that the degree of care exacted of plaintiff by the law was emphasized by the rhetorical flourish that it was his duty to use his "Godgiven senses." [Rose v. Kansas City, 102 S. W. 57C.] In a given instruction the jury had been told that if his injuries were wholly or partly caused by his "failure to watch or observe his footsteps" he could not recover. In order to watch or observe his footsteps he would be bound to use "his God-given senses," and hence the instruction given was complete enough on this point. The third re-

fused instruction assumed that if plaintiff allowed his attention to be attracted to the work on the adjacent building, and continued to walk with his eyes fixed on said work and tripped over the hose while watching it, he was guilty of contributory negligence. This was tantamount to saying that to turn his eyes for a short while away from the sidewalk to the surrounding objects was necessarily an act of negligence. Such is not the law. As already said, plaintiff was bound to use ordinary care, but it would not follow he was remiss in that regard if he looked in another direction from that in which he was walking. This was directly decided in Barr v. Kansas City and McCormick v. City of Munroe, supra. The fourth refused instruction commented on a city ordinance which was not in evidence, having been excluded by the court when plaintiff offered it. The fifth of the refused instructions, if given, would have made plaintiff's case fail if the jury found the hose was not maintained at a height above the sidewalk of about eight inches, and in other respects did not conform exactly to the allegations of the petition. The petition alleged the hose was negligently stretched across the sidewalk at the height "of about eight inches from the surface." Only the substance of the allegation needed to be proved namely, that the hose rose far enough above the walk to make it a dangerous obstacle and one likely to trip foot travelers. The sixth and seventh instructions relating to plaintiff's contributory negligence, were covered by those given. Certain city ordinances permitting defendant to put in the water tap to get water to use in the work on the foundation, were offered by defendant and excluded. We do not see their relevancy. The issue was not whether defendant had the right to connect a hose with the tap and thereby convey water to where work was being done on the foundation. Defendant had the right to use the hose for that purpose, but not to use it in a careless manner—not to

stretch it taut across and several inches above the walk and keep it so stretched. At any rate the jury could find such a use of the hose was tortious. The issue as to whether or not the hose was stretched and maintained by defendant across the sidewalk so as to render the walk unsafe for people travelling along it, was squarely submitted to the jury in the first instruction given for plaintiff.

The jury returned a verdict for $2,800, and it is contended this was grossly excessive and the result of passion and prejudice and should have been set aside. The facts regarding the injury as established by the testimony of the plaintiff, of the physician who attended him throughout his succeeding ailment, and of another physician who examined him shortly before the trial, were substantially these: plaintiff was stunned by the fall, but arose and went to his place of business a few blocks away. That night he went by rail to his home at Ferguson, a suburban town some twelve miles from St. Louis. Before he got to his place of business his knee pained him and became stiff, so that when he undertook to go to his train he had to aid himself in walking by leaning against the buildings. He was helped on the train by friends and met at the Ferguson station by his physician, who drove him home. By that time his leg was swollen and painful. The injury was to the left knee and the ligaments of the leg, the swelling extending over the lower third of the thigh. The limb was put in a plaster cast, and the casts were changed from time to time as they became painful; but the leg was kept in a cast for nearly three months. Plaintiff was able to go about on crutches, which he used for three months, and subsequently was able to walk with a cane which he used for another three months. It seems the membranes about the knee joint were ruptured, letting out the fluid which lubricates the joint. The effect of this, according to the physicians, was a gradual roughening

of the surface of the joint so that it was painful for plaintiff to walk. There is more or less stiffness in his limb. He is particularly affected in going up and down stairs and in bad weather. The testimony showed that when the trial occurred, which was a year after the accident, plaintiff still suffered pain and inconvenience from the limb and the testimony of the doctors would support a finding that the injury is permanent, though they were not positive on this point. But the evidence tends to show certain delicate membranes about the knee have sustained an injury of a permanent character which will cause plaintiff inconvenience in the use of his limb and give him pain. Besides the injury to the knee, the sheathing inclosing the ligaments of the leg was ruptured in the fall. It was shown that two or three days after the accident plaintiff was able to come to his office on crutches and give some attention to his business from time to time; that is, was able to spend about two hours or so looking after it; but he was not able to get around to any extent. Plaintiff's testimony goes to show his financial loss in consequence of the injury was as much as $150 a month for several months, and his expense for medical attendance $200. On this testimony we do not see that we are justified in setting aside the verdict on the ground that excessive damages were assessed. [New v. Railroad, 89 S. W. 1043.] It may be stated there was no evidence to controvert the testimony of plaintiff and his physicians as to the extent of his injury.

The judgment is affirmed. All concur.